IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SELMA HOUSING DEVELOPMENT CORPORATION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION 04-0449-WS-B ) |
| THE SELMA HOUSING AUTHORITY, | ) ) |
| Defendant. | ) |

**ORDER**

This matter is before the Court on defendant Selma Housing Authority's Motion to Award Attorney's Fees (doc. 53) and Motion to Tax or Re-Tax Costs (doc. 55). Both Motions have been briefed and are now ripe for disposition.

**I.      Background.**

This action arose from plaintiff Selma Housing Development Corporation's ("SHDC") dissatisfaction with defendant Selma Housing Authority's ("SHA") administration of the Section 8 publicly assisted housing program in Selma, Alabama, as well as with SHA's performance under a property management agreement with SHDC. SHDC brought five causes of action against SHA, including three claims under 42 U.S.C. § 1983 for alleged due process violations, as well as state-law claims for breach of contract and fraud. The § 1983 causes of action were grounded in theories that SHA had engaged in improper rent reasonableness determinations, had wrongfully cancelled housing assistance payment contracts ("HAP contracts") through which SHDC received payment for Section 8 tenants, and had wrongfully increased utility allowances.

On August 16, 2005, the undersigned entered an Order (doc. 49) granting SHA's Motion for Summary Judgment. Count I, the § 1983 claim premised on rent reasonableness issues, was dismissed based on SHDC's concession that it was time-barred. Count II, the § 1983 claim alleging wrongful non-renewal of HAP contracts, was dismissed because (a) SHDC had no protected property interest

in renewal of HAP contracts; (b) SHDC made an insufficient showing that such a property right was created by estoppel; and (c) even if a property right existed, SHDC failed to show that the procedures afforded it by SHA were constitutionally inadequate, inasmuch as SHDC was afforded both notice and an opportunity to be heard as to the nonrenewal decision.  Count III, the § 1983 claim alleging improper adjustment of utility allowances, was rejected because SHDC did not demonstrate a protectable property interest in maintaining utility allowances at a fixed level.

Similar conclusions were reached as to the two state-law causes of action.  The Court dismissed Count IV, which alleged that SHA had breached a management contract with SHDC, because certain aspects of the claim were untimely and SHDC failed to establish that the complained-of conduct breached the contract.  Finally, as for Count V, alleging fraudulent representations by SHA that SHDC would receive project-based Section 8 status for newly constructed housing units, the Court deemed that claim untimely, inasmuch as it was initiated well outside the applicable limitations period.

In the wake of the Court's dismissal of this action via the August 16 Order, SHA comes forward to request an award of attorneys' fees of approximately $153,000, as well as taxation of costs in the amount of $13,026.76.  Each of these requests will be addressed in turn.

**II.    Motion to Award Attorney's Fees.**

*A.    Legal Standard.*

As authority for its Motion to Award Attorney's Fees, defendant relies on 42 U.S.C. § 1988(b), which provides that in § 1983 actions, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs."  *Id.*  Case law interpreting § 1988 has made clear that a prevailing § 1983 defendant can recover attorney's fees only if "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."  *Evans v. Monroe County Sheriff's Dept.*, 2005 WL 2277467, *1 (11th Cir. Sept. 20, 2005) (quoting *Baker v. Alderman*, 158 F.3d 516, 524-25 (11th Cir. 1998)); *see also Quintana v. Jenne*, 414 F.3d 1306, 1309 (11th Cir. 2005) ("prevailing defendants may receive attorney's fees only when the plaintiff's case is frivolous, unreasonable, or without foundation"); *Perry v. Orange County*, 341 F. Supp.2d 1197,

1204 (M.D. Fla. 2004) (similar).[1]

In applying this test, the Eleventh Circuit has identified the following relevant factors: "(1) whether the plaintiff established a *prima facie* case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." *Sullivan v. School Bd. of Pinellas County*, 773 F.2d 1182, 1189 (11th Cir. 1985); *see also Quintana*, 414 F.3d at 1309 (same). "While these general guidelines can be discerned from the case law, they are general guidelines only and not hard and fast rules. Determinations regarding frivolity are to be made on a case-by-case basis." *Bruce v. City of Gainesville, Ga.*, 177 F.3d 949, 952 (11th Cir. 1999) (quoting *Sullivan*, 773 F.2d at 1189); *see also Evans*, 2005 WL 2277467, at *1 (explaining that "no 'hard and fast' rules exist for frivolity determinations"); *Bonner v. Mobile Energy Services Co.*, 246 F.3d 1303, 1305 n.9 (11th Cir. 2001) ("*Sullivan* does not create a bright line checklist nor does it permit of a mechanical application."). The district court should always focus on whether the complaint "is so lacking in arguable merit as to be groundless or without foundation." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1176 (11th Cir. 2005); *see also Jerelds v. City of Orlando*, 194 F. Supp.2d 1305, 1311 (M.D. Fla. 2002) (in ascertaining whether to award fees, district court must focus on whether case is "seriously lacking in arguable merit").[2]

Courts construing the *Sullivan* factors have been circumspect about awarding attorney's fees

---

[1] Courts have made clear that this test is, and is intended to be, a rigorous one that parallels the threshold for a prevailing defendant to recover attorney's fees in the Title VII context. *See, e.g.*, *Perry*, 341 F. Supp.2d at 1204 ("The standard for awarding attorneys' fees to a prevailing defendant is a stringent one."); *Hughes v. Rowe*, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (adopting same "stringent standard" used in Title VII cases to determine when award of attorney's fees is appropriate in § 1983 cases).

[2] As the *Sullivan* standard makes clear, a prevailing civil rights defendant is not entitled to attorney's fees as a matter of course, even when the plaintiff's claims are denied on a motion for summary judgment. *See O'Neal v. DeKalb County, Ga.*, 850 F.2d 653, 658 (11th Cir. 1988) (explaining that "[s]imply because the district court granted the defendants' motion for summary judgment does not mean that the plaintiffs' action was frivolous"); *Head v. Medford*, 62 F.3d 351, 356 (11th Cir. 1995) ("Merely because plaintiff did not ultimately prevail on her federal claims does not determine that her claims were groundless."); *Jerelds*, 194 F. Supp.2d at 1310 ("the fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees").

to a prevailing defendant absent egregious circumstances. *See Cordoba*, 419 F.3d at 1176 ("In the cases in which we have sustained findings of frivolity, plaintiffs have typically failed to introduce any evidence to support their claims."); *Perry*, 341 F. Supp.2d at 1205 (explaining that courts generally do not award fees "unless the plaintiffs refused to acknowledge clear precedent or asserted a claim which was based knowingly on a nonexistent interest"). This reticence is animated by judicial recognition of the potential chilling effect that widespread attorney's fee awards to prevailing defendants might have on the filing of meritorious civil rights actions. *See Bonner*, 246 F.3d at 1305 (noting that "[c]are must be taken to remain sensitive to the policy considerations militating against imposing fees on unsuccessful plaintiffs in discrimination claims which might discourage all but the most airtight claims and undercut the efforts of Congress to promote the vigorous enforcement provisions of [Section 1983]"); *Cordoba*, 419 F.3d at 1181 (cautioning against *post hoc* logic that claims must have been unfounded because plaintiff did not prevail, where such hindsight could chill all but the most airtight claims given uncertainties inherent in litigation). Given these concerns and the Eleventh Circuit's guidance that requests for attorney's fees by prevailing defendants in civil rights cases must be reviewed on a case-by-case basis, the Court will not mechanically apply the *Sullivan* factors to the exclusion of other relevant considerations. *See Perry*, 341 F. Supp.2d at 1205 ("Rigid application of these factors would lead to a result that Congress did not intend--that any defendant who prevailed on a dispositive motion would be entitled to fees.").

### *B.     Analysis.*

SHA urges the Court to exercise its discretion in favor of awarding attorney's fees. In support of this request, SHA correctly states that each of the three *Sullivan* criteria militates in favor of a fee award in this case, inasmuch as the Order granting summary judgment necessarily concluded that SHDC had failed to establish a *prima facie* case, the case was dismissed before trial, and SHA never extended any settlement offers to SHDC.

In the Court's view, however, a more nuanced analysis is required. As noted above, that a defendant was granted summary judgment does not render an award of attorney's fees automatic under § 1988(b). Neither *Sullivan* nor any other authority located by this Court mandates an award of

attorney's fees to a prevailing defendant in every civil rights case where (i) that defendant was granted summary judgment and (ii) no any settlement offers were made. Something more is required to justify a finding of frivolity or unreasonableness.

Notwithstanding the grant of summary judgment to SHA, the Court is of the opinion that SHDC had at least colorable bases for its claims. As for Counts II and III (constitutional claims alleging deprivation of a property interest without due process of law), SHDC offered creative and facially plausible theories to support its contention that SHA's conduct implicated a protectable property interest. That the Court disagreed with SHDC's position in no way translates into a conclusion that those causes of action were frivolous.[3] With respect to Count IV, SHDC offered substantial evidence of what it perceived to be SHA's inadequate performance under the management contract. In the Court's estimation, that evidence did not establish a breach of the contract, but SHDC's showing was not so threadbare as to warrant a finding of frivolity. As for Count V, SHDC offered a cogent (albeit incorrect) argument for why that cause of action should be deemed timely brought. The Court's rejection of that theory in no way warrants a finding that Count V was frivolous. And finally, as for Count I, the record reflects that SHDC withdrew that claim on summary judgment upon realizing that it was untimely. Plaintiff's decision to abandon Count I upon being confronted with evidence that it was legally untenable is laudable, good-faith conduct that militates against an award of attorney's fees. *Compare Jerelds*, 194 F. Supp.2d at 1310 (explaining that a civil rights plaintiff may be responsible for the defendant's attorney's fees "if he continues to litigate a once colorable claim after it becomes obvious that the claim is frivolous, unreasonable, or groundless"); *Perry*, 341 F. Supp.2d at 1205 ("where a plaintiff continues to litigate even after the claim was clearly groundless, frivolous, or unreasonable, an award of fees may be proper").

In short, the undersigned finds that SHDC's claims were not frivolous and did not trigger attorney's fee liability under § 1988(b). The legal and factual issues litigated herein were quite complex,

---

[3] Indeed, the lack of frivolity of those claims was underscored by SHA's inability on summary judgment to direct the Court to any clear-cut, well-settled lines of Eleventh Circuit or Supreme Court precedent that were necessarily fatal to SHDC's ability to establish a viable constitutional claim.

as evidenced by the more than 75 pages of briefing submitted by the parties on summary judgment, the dozens of accompanying exhibits, and the 41-page Order granting summary judgment. This case was not one in which SHA had a slam-dunk, airtight, surefire defense; rather, the legal status of SHDC's causes of action was far more uncertain. This action is akin to *O'Neal*, wherein the Eleventh Circuit explained that "although the plaintiffs' section 1983 suit does not merit relief, their causes of action were plausible." *O'Neal v. DeKalb County, Ga.*, 850 F.2d 653, 658 (11th Cir. 1988) (finding that district court did not err in denying attorney's fees under § 1988); *see also Cordoba*, 419 F.3d at 1182 ("Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit."). Accordingly, SHA's Motion to Award Attorney's Fees is **denied** on the ground that SHDC's claims, while not sustainable in the context of this action, were not frivolous.[4]

## III. Analysis of Motion to Tax or Re-Tax Costs.

Separate and apart from its request for attorney's fees, defendant asks that costs in the amount of $13,026.76 be taxed against plaintiff. Pursuant to Rule 54(d), Fed.R.Civ.P., costs "shall be allowed as of course to the prevailing party unless the court otherwise directs." *Id.* Clearly, SHA is a prevailing party in this case, given the dismissal of SHDC's claims on summary judgment. However, Rule 54(d) does not confer upon this Court unfettered discretion to "tax costs to reimburse a winning litigant for every expense he has seen fit to incur in the conduct of his case." *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235, 85 S.Ct. 411, 415, 13 L.Ed.2d 248 (1964). Rather, statutory authorization is a

---

[4] In reaching this disposition of SHA's fee petition, the Court does not resolve the parties' skirmish over SHDC's ability to pay. In its Motion, SHA maintained that SHDC "has the means" to pay defendant's attorney's fees. (Motion, ¶ 10.) SHDC vigorously disputed this allegation by suggesting that "requiring the plaintiff to pay the defendant's attorney's fees would likely be the death knell for the plaintiff as an ongoing business." (Opposition, ¶ 10.) SHA contested the veracity of SHDC's "death knell" contention by proffering evidence of plaintiff's financial vigor. (Reply, at Exh. A & B.) Neither party has offered any authority holding that a defendant's ability to pay has any relevance in the § 1988 fee award calculus; therefore, the Court does not weigh this factor in its analysis. *See Scelta v. Delicatessen Support Services, Inc.*, 203 F. Supp.2d 1328, 1339 (M.D. Fla. 2002) ("a losing party's financial status need not be considered in determining the amount of the award" of costs awarded to a prevailing party).

necessary condition to the shifting of litigation costs.  *West Virginia Univ. Hospitals, Inc. v. Casey*, 499 U.S. 83, 86, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991).  "[A]bsent explicit statutory or contractual authorization, federal courts are bound by the limitations set out in 28 U.S.C. § 1920" in awarding costs to a prevailing party.  *Arcadian Fertilizer, L.P. v. MPW Indus. Services, Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001).

SHA's request for an award of costs encompasses the following four components: (1) fees for service of summonses and subpoenas ($75.14); (2) court reporter fees for transcripts ($9,348.62); (3) witness fees ($40.00); and (4) fees for exemplification and copying of papers ($3,563.00).  In response to the Motion, SHDC concurs that items (1) and (3) are properly taxed, but disputes the propriety and amount of items (2) and (4).

### A.     *Court Reporter Fees.*

Under 28 U.S.C. § 1920(2), court reporter fees are properly taxed as costs for "any part of the stenographic transcript necessarily obtained for use in the case."  *Id.*  Although the Eleventh Circuit has acknowledged that taxation of deposition costs is authorized by statute, it has cautioned that such costs are not recoverable where "the deposition costs were merely incurred for convenience, to aid in thorough preparation, or for purposes of investigation only."  *U.S. Equal Employment Opportunity Commission v. W&O, Inc.*, 213 F.3d 600, 621 (11th Cir. 2000) (citation omitted).  Pursuant to § 1920(2), defendant seeks taxation of $9,348.62 for fees and costs associated with nearly a dozen depositions taken in this case.

Plaintiff opposes this request, maintaining that none of these depositions were "necessarily obtained" because the Motion for Summary Judgment "did not turn upon any matter uncovered during the course of the depositions," but rather was "entirely based upon a legal analysis" of SHDC's property rights.  (Plaintiff's Response (doc. 58), at 2.)  The Court cannot agree.  Defendant's Rule 56 Motion relied substantially on the depositions of Stephen Smitherman (both depositions), Greg Price, Jacqueline Peake, Johnny Moss and Boyd Pugh.[5]  The summary judgment Order specifically cited to

---

[5]     Defendant's summary judgment motion also cited to the deposition of Joseph Smitherman, but solely for the proposition that Stephen Smitherman was Joseph's son, and that Joseph

passages from each of those depositions. Because the Court expressly relied on these deposition transcripts in its ruling on summary judgment, these transcripts were clearly "necessarily obtained for use in the case," and the associated transcription costs are properly taxed against plaintiff. *See Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1471 (10th Cir. 1997) ("A district court does not abuse its discretion in taxing transcription costs associated with depositions that were actually utilized by the court in considering the defendant's motion for summary judgment."); *W&O*, 213 F.3d at 621 ("A district court may tax costs associated with the depositions submitted by the parties in support of their summary judgment motions.").

The depositions of Nancy Rives, Hugh Staub, Rex Waldrop, Erika Smitherman and Joseph Smitherman stand on a different footing because they did not factor into either the summary judgment ruling or defendant's summary judgment arguments in any meaningful way. Nonetheless, the law is clear that there is no *per se* prohibition against taxation of costs for depositions not used at summary judgment or trial. *See W&O*, 213 F.3d at 621-22 (affirming award of costs for deposition transcripts not used at summary judgment or at trial, where "there is no evidence showing that their depositions were not related to an issue in the case when the depositions were taken"); *Murphy v. City of Flagler Beach*, 761 F.2d 622, 631 (11th Cir. 1985) (rejecting as abuse of discretion trial court's blanket rule against awarding costs for all depositions not used at trial). SHA represents, without contradiction, that each of these deponents was listed on SHDC's initial disclosures as a prospective fact or expert witness. The *W&O* panel explained that taxation of deposition costs for witnesses on a losing party's witness list is reasonable because such listing shows that (i) the prevailing party might need deposition transcripts to cross-examine the witnesses effectively, and (ii) the information possessed by those witnesses was not so irrelevant or unimportant as to render their depositions outside the realm of discovery. *See W&O*, 213 F.3d at 621. Absent any showing by SHDC that any portion of these depositions was "not related to an issue which was present in the case at the time the deposition was

---

is a former mayor of Selma, Alabama. (Defendant's Brief, at 1 & Exh. 36.) If this largely irrelevant tidbit needed to be included at all, surely it could have been culled from Stephen's depositions, without separate citation to Joseph's deposition.

taken," *W&O*, 213 F.3d at 621, the Court finds that the Rives, Staub, Waldrop, E. Smitherman and J. Smitherman depositions were "necessarily obtained for use in the case," and that the costs incurred by SHA in connection with those depositions are properly taxable.[6]

      Even though all of the depositions were reasonably necessary, the Court cannot confer across-the-board approval to the entire array of deposition costs claimed by SHA for two reasons. First, among the court reporter fees for which SHA seeks reimbursement are $925.00 for video expenses associated with Greg Price's deposition, and $737.52 for video expenses associated with Joseph Smitherman's deposition. Defense counsel incurred these video expenses in addition to regular court reporter transcription expenses for the deposition. SHA's submission offers no explanation for why duplicate methods of recording these depositions were reasonably necessary. Certainly, it might have been convenient for defense counsel to record the depositions of Messrs. Price and Smitherman in both video and paper form; however, there is no explanation why the videos were "necessarily obtained for use in the case," given the existence and availability of paper transcripts of those very depositions. As one court explained, "[t]he concept of necessity for use in the case connotes something more than convenience or duplication to ensure alternative methods for presenting materials at trial." *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 449 (4th Cir. 1999). In the absence of a showing by SHA why either a transcript or a videotape would not have been sufficient for its purposes, the Court cannot find that the costs of both recording methods were reasonably incurred. Accordingly, only the transcription costs for those two depositions will be allowed, and SHA's request for recovery of redundant, duplicative videotaping expenses for those same depositions is denied. *See Cherry*, 186 F.3d at 449

---

[6] This conclusion is bolstered by SHA's uncontroverted explanation that the Waldrop and E. Smitherman depositions were reasonably necessary because SHDC designated them as 30(b)(6) deponents on certain factual issues related to SHDC's claims, that the Staub deposition was reasonably necessary because SHDC designated him as a utilities expert concerning the utility allowance claim, and that Rives was the secretary of SHDC and a manager of Minnie B. Anderson Homes, such that she would be expected to have substantial knowledge relating to many pertinent issues in this case. Given these witnesses' clear link to SHDC's allegations, the Court is persuaded that their depositions were "necessarily obtained for use in the case," notwithstanding SHA's failure to rely on those depositions on summary judgment.

(excluding video costs where prevailing party did not demonstrate that costs of both transcribing and videotaping plaintiff's deposition were necessarily obtained).

Second, the court reporter invoices reflect that SHA spent hundreds of dollars on ancillary, add-on services for the convenience of counsel.  Such expenses included extra fees for condensed transcripts, ASCII computer disks, e-mailed copies of transcripts, and Federal Express delivery.  Such supplemental services may be helpful and convenient, but they are unquestionably not necessary.  In the Court's view, these types of expenses epitomize costs "merely incurred for convenience" or "to aid in thorough preparation," and are therefore not recoverable under the § 1920 scheme pursuant to *W&O*. *See also Harkins v. Riverboat Services, Inc.*, 286 F. Supp.2d 976, 980-81 (N.D. Ill. 2003) (disallowing deposition costs for ASCII disks, "minuscripts," and shipping/delivery as being for the convenience of counsel and/or ordinary business expenses).  These ancillary fees total $540 for all of the depositions.[7]  The award of deposition costs will be adjusted downward by that amount to exclude these non-reimbursable expenses.

After subtracting $1,662.52 for duplicative video deposition services and $540 for convenience-based add-on products and services, the total taxable costs for court reporter fees in this case are **$7,146.10**.

### B.     *Fees for Copies of Papers.*

Defendant also requests taxation of $3,563 in costs for copies of papers obtained by SHA in connection with this matter.  By statute, "[f]ees for exemplification and copies of papers necessarily obtained for use in the case" are properly taxable.  28 U.S.C. § 1920(4).

---

[7]     An itemized breakdown of these non-compensable deposition costs is as follows: (a) $90 for condensed, ASCII, and E-Tran services in the Stephen Smitherman deposition; (b) $100 for ASCII, condensed, E-transcript and Federal Express services in the Stephen Smitherman Volume I deposition; (c) $65 for ASCII, condensed, and E-transcript services in the Stephen Smitherman Volume II deposition; (d) $45 for ASCII and condensed services in the Price deposition; (e) $65 for condensed and Federal Express services in the Staub deposition; (f) $65 for ASCII, condensed, and E-transcript services in the Rives deposition; (g) $85 for condensed, E-transcript and Federal Express services in the J. Smitherman deposition; and (h) $25 for condensed and ASCII services in the Peake, Moss and Pugh depositions.

Under well-established law in this circuit, "[u]nsubstantiated claims that particular documents were necessary are insufficient to permit recovery. [Movants] must come forward with evidence showing the nature of the documents copied, including how the copies were used or intended to be used in the case." *Grady v. Bunzl Packaging Supply Co.*, 161 F.R.D. 477, 479 (N.D. Ga. 1995) (citations omitted); *see also Cullens v. Georgia Dep't of Transportation*, 29 F.3d 1489, 1494 (11th Cir. 1994) (district court properly disallowed photocopying costs where prevailing party failed to present required evidence regarding documents copied, including their use or intended use). Thus, photocopies are only taxable as costs in certain circumstances. *See Grady*, 161 F.R.D. at 479 (copy charges are not taxable if copies were made for convenience, preparation, research, or records of counsel; rather, party seeking to recover costs must show that the copies were necessary). "The burden of establishing entitlement to photocopying expenses lies with the prevailing party." *Scelta v. Delicatessen Support Services, Inc.*, 203 F. Supp.2d 1328, 1340 (M.D. Fla. 2002).

SHA seeks to recover payments to various third parties from whom it subpoenaed and received financial records of SHDC, Deer Ridge, Ltd., Deer Ridge, Inc., and Stephen and Erika Smitherman. In that regard, defendant is requesting not only the cost of photocopying the documents, but also the labor costs billed by the third parties, presumably for time spent locating, gathering and organizing those documents.[8] The latter category of costs is not taxable under § 1920(4), as a matter of law. Indeed, "the fees for 'copies of papers' permitted under § 1920(4) allows recovery only for the reasonable costs of actually duplicating documents, not for the cost of gathering those documents as a prelude to duplication." *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 n.5 (5th Cir., Unit B 1982) (denying reimbursement of paralegal expenses incurred in gathering records for copying); *see also*

---

[8] Because the invoices include a separate fee of 25 cents per page for photocopying, the Court assumes that the labor costs do not include time spent by the third parties' employees copying the documents. To the extent that those invoices do include labor costs for actual operation of the copying machines, in addition to a 25 cents per page fee, they are unreasonable charges for which double taxation of costs is not appropriate. Any reasonable outside copy shop almost certainly could have copied the records at issue for 25 cents per page or less, *inclusive* of labor costs. That SHA may have incurred unreasonable expenses in obtaining photocopies is not a valid ground for passing such expenses along to SHDC.

*Arcadian Fertilizer*, 249 F.3d at 1296 (narrowly defining "copies of papers" under § 1920(4) as being confined to "reproductions involving paper in its various forms").  The five photocopy invoices in this case include $1,728 in fees for labor charges incurred by the third parties in gathering and organizing the subpoenaed documents.  Such fees are not taxable under § 1920(4) and will be deducted from the award of costs.

The copy invoices also include a total of $26 in charges for mailing documents to SHA.  Such mailing charges are not "[f]ees for ... copies of paper" and therefore are not recoverable under § 1920(4).  *See Zeuner v. Rare Hospitality Intern., Inc.*, 386 F. Supp.2d 635, 640 (M.D.N.C. 2005) (postage expenses are not taxable as costs under § 1920); *Miller v. Kenworth of Dothan, Inc.*, 117 F. Supp.2d 1247, 1266 (M.D. Ala. 2000) ("Pursuant to § 1920, costs for postage ... are clearly nonrecoverable."); *see generally Harkins*, 286 F. Supp.2d at 980-81 (postage, shipping and delivery charges are ordinary business expenses that are not taxable).

Finally, SHDC objects that the copy charges are nontaxable because "defendant has failed to show that the documents were in any way necessary to the case." (Plaintiff's Response, at 4.)  In response, SHA argues that it reasonably required a complete set of SHDC's financial records for use in assessing SHDC's damages claims, particularly those for lost rental income arising from increases in utility allowances. (Reply Brief (doc. 61), at 5.)  This explanation satisfies SHA's burden of showing the necessity of photocopy charges from financial institutions for SHDC's financial records; however, it in no way explains why SHA needed 2,708 pages of the personal financial records of Stephen and Erika Smitherman from People's Bank dating back to 1996, or why it needed 830 pages of the financial records of Deer Ridge, Ltd., and Deer Ridge, Inc.  Furthermore, two of the copy invoices (those from SouthTrust Bank and Wilson Price) do not identify the individual(s) or entity (-ies) whose financial records were produced.  The Court therefore has no way of knowing whether these photocopies were for SHDC financial records or for someone or something else's.  Simply put, the Court cannot determine from this record whether SHA "could have reasonably believed that it was necessary to copy the papers at issue," for any documents except for SHDC's financial records. *W&O*, 213 F.3d at 623.  In these important respects, SHA has failed to meet its burden of showing

that these specific photocopy charges were necessarily obtained for use in this case.

In light of these considerations, the Court will tax photocopying charges of **$208.00** to SHDC, representing the invoiced charge from Peoples Bank for 832 pages of financial records relating to SHDC, from 1996 through April 1995.  All other photocopying charges claimed by SHA are excluded.

**IV.    Conclusion.**

For all of the foregoing reasons, defendant's Motion to Award Attorney's Fees (doc. 53) is **denied** because plaintiff's claims, while nonmeritorious, were not frivolous.  Defendant's Motion to Tax or Re-Tax Costs (doc. 55) is **granted in part**, and **denied in part**.  After disallowing certain categories of costs as identified herein, costs are hereby **taxed** against plaintiff in the amount of **$7,469.24**, including $75.14 in fees for services of summons and subpoenas, $40.00 for witness fees, $7,146.10 for court reporter fees, and $208.00 for photocopying expenses.

DONE and ORDERED this 24th day of October, 2005.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE